# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RONALD HUCK and PEGGY HUCK, Individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>PHILADELPHIA CONSOLIDATED HOLDING CORP. D/B/A PHILADELPHIA INSURANCE COMPANIES, and PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>        Defendants. | Civil Action No.: 1:19-CV-3336-AT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS CLASS ACTION COMPLAINT** |

Defendants, Philadelphia Consolidated Holding Corp. d/b/a Philadelphia Insurance Companies ("Philadelphia Consolidated") and Philadelphia Indemnity Insurance Co. ("Philadelphia Indemnity") hereby file this reply in support of their motion to dismiss.  *See* DE 3.

## I. THE LIMITATIONS PERIOD IN THE POLICY BARS PLAINTIFFS' CLAIMS.

Plaintiffs' claims are barred by the 2 year limitations period in the Policy.[1] That provision requires insureds to file any lawsuit related to the Policy within 2 years after the date of loss.  DE 1-2 at 142.  Because Plaintiffs allege that the loss at issue here occurred in January 2014, *see* DE 1-1 at ¶ 20, more than 2 years before they filed suit, their claim is barred.

Plaintiffs, however, contend that the 2 year limitations period does not apply to the UltimateCover Part of the Policy ("UltimateCover") under which their claim arises.[2]  *See* DE 13 at 17.  Plaintiffs are wrong.  The 2 year limitation period is expressly incorporated into UltimateCover by the UltimateCover Form Schedule. *See* DE 1-2 at 59.  That schedule lists the forms, conditions, and endorsements that

---

[1] All capitalized terms not otherwise defined herein have the meaning set forth in Philadelphia's Motion to Dismiss.  *See* DE 3.

[2] The Policy contains several "Parts," some of which Plaintiffs purchased and some of which they did not.  *See* DE 1-2 at 28.  UltimateCover is one of these Parts.  *See id.*  As discussed in Defendants' Motion to Dismiss, however, the Complaint does not identify the coverage, provision, or part of the Policy under which Plaintiffs filed suit.  Plaintiffs' Response Brief contends, for the first time, that they are suing under UltimateCover.  DE 13 at 17.

1

apply to and are incorporated within UltimateCover. One of the forms listed on the schedule is the "Commercial Property Conditions." *See id.* As Plaintiffs note in their Brief, the Commercial Property Conditions expressly state that "[n]o one may bring a legal action against us under this [UltimateCover] Coverage Part unless: . . . The action is brought within 2 years after the date on which the direct physical loss or damage occurred." DE 1-2 at 142; *see also* DE 13 at 17 (noting that "Commercial Property Conditions" include 2 year limitations period). The 2 year limitation period is thus expressly incorporated into UltimateCover.

Here, Plaintiffs allegedly suffered a loss in January 2014, more than 2 years before they filed suit on July 23, 2019. *See* DE 1. For that reason, Plaintiffs' claims are barred.

Nevertheless, Plaintiffs argue that even if the 2 year limitations period applies, Philadelphia waived the limitations period. *See* DE 13 at p. 18, n.15. It did not. "[W]aiver [of the contractual limitation provision]. . . may result when the insurance company's 'investigations, negotiations, or assurances . . . up to and past the period of limitation . . . led the insured to believe the limitation would not apply.'" *Suntrust Mortg., Inc. v. Georgia Farm Bureau Mut. Ins. Co.*, 416 S.E.2d 322, 324 (Ga. Ct. App. 1992). "[M]ere silence is not sufficient to establish a waiver unless there is an obligation to speak." *Jordan v. Flynt*, 240 Ga. 359, 366, 240 S.E.2d 858, 863 (1977).

"Unless the agent perpetrates some fraud that induces the insured to delay bringing the lawsuit until after the time for bringing suit has expired, the insured cannot rely on the agent's conduct as an excuse for the failure to sue." *Owners Ins. Co. v. Ogden*, 275 Ga. 565, 566(1), 569 S.E.2d 833 (2002)

Here, Plaintiffs do not allege any facts showing that Defendants made *any* representations to Plaintiffs, much less *fraudulent* representations that led Plaintiffs to believe the limitations period would not apply.[3] Indeed, the Complaint does not include any allegations regarding Defendant's representations (or lack thereof) or Plaintiffs' belief regarding the applicability of the limitation period. *See Ogden*, 275 Ga. 565, 566 (agent's representations or lack thereof cannot create waiver unless insured establishes "perpetuates some fraud that induces the insured to delay.").

Plaintiffs' reliance of *Morrow v. Allstate*, No. 5:16-cv-00137-HL (MD Ga.), is misplaced. There, the Court cited numerous allegations, including the plaintiffs' allegation that the insurer's conduct led them to believe that the limitations period would not apply. *Id.* (August 15, 2017 Order, DE 25 at p. 4-5) (quoting allegations from the amended complaint).[4] Here, the Complaint contains no such allegations.

---

[3] Plaintiffs Response Brief contends that "Philadelphia never indicated that any portion of Plaintiffs' loss was not covered;" and that "Philadelphia never notified Plaintiffs that it would not assess for diminished value and either pay it or deny its existence as required by law." DE 13 at 18. But Plaintiffs did not plead any such facts, and do not cite to any allegation in the Complaint.
[4] Although *Morrow* is distinguishable, it is also non-binding on this Court and inconsistent with Georgia precedent. *See Jordan v. Flynt*, 240 Ga. 359; *Ogden*, 275 Ga. at 566. In *Jordan*, the

3

But even if it did, *Morrow* is distinguishable because Defendants had no obligation to discuss the claim with Plaintiffs, much less make affirmative representations regarding coverage for diminished value. As discussed in Defendants' Motion to Dismiss and *infra*, Plaintiffs are not Named Insureds under the Policy. *See* DE 1-2 at 22 (listing Named Insureds but not listing Plaintiffs). Although the Policy gives Philadelphia Indemnity the *option* to adjust a claim with a property owner (like Plaintiffs), it does not obligate Philadelphia Indemnity to do so. *See* DE 1-2 at 161 (Philadelphia Indemnity may, at its sole discretion, pay property owner, rather than Named Insured, but Philadelphia Indemnity has no obligation to deal with property owner). Philadelphia Indemnity cannot waive a contractual limitation provision by failing to make representations to a third-party to whom it has no duty to speak. Plaintiffs have cited no case law to the contrary. Thus, unlike *Morrow*, Philadelphia Indemnity's representations (or lack thereof) cannot establish waiver (even if Plaintiffs had pled those allegations, which they have not). For these reasons, the contractual limitations period bars Plaintiffs' claim.

---

Georgia Court of Appeals held that "[m]ere silence is not sufficient to establish a waiver unless there is an obligation to speak." *Id.* at 366. The court was more clear in *Ogden*, stating that "unless the agent perpetrates some fraud that induces the insured to delay bringing the lawsuit until after the time for bringing suit has expired, the insured cannot rely on the agent's conduct as an excuse for the failure to sue." *Ogden*, 275 Ga. at 566. Contrary to this precedent, *Morrow* implies that an insurer's mere silence--without more--can establish waiver. That is not the law in Georgia. Thus, even if *Morrow* ere applicable, which it is not, this Court should apply *Jordan* and *Ogden*, not *Morrow*.

## II.     PLAINTIFFS LACK STANDING

### A.     Plaintiffs are not first party beneficiaries under O.C.G.A. § 9-2-20(a).

Plaintiffs misinterpret the plain terms of the Policy to argue that they have standing to sue as first party beneficiaries under O.C.G.A. § 9-2-20(a).  First, Plaintiffs argue that they are insureds under the Policy.  In support, Plaintiffs rely on the liability portions of the policy, noting that the Commercial Liability coverage lists "Condominium Unit Owners" as "Additional Insureds."  *See* DE 1-2 at 104. But Plaintiffs are not suing under the Commercial Liability coverage.  Instead, Plaintiffs contend their claim arises under UltimateCover.  *See* DE 13 at 8.  Thus, the definition found in the Commercial Liability coverage is inapplicable.

Second, Plaintiffs argue that the definition of "you" and "your" in the Commercial General Liability Coverage Form includes Plaintiffs as "person[s] . . . qualifying as Named Insured under this Policy."  *See* DE 13 at 7 (quoting DE 1-2 at 78).  But, as discussed above, the Commercial General Liability Coverage Form applies to the liability portions of the policy, not to UltimateCover, and those definitions are therefore inapplicable to Plaintiffs' claim. DE 1-2 at 78.[5]

Instead, UltimateCover incorporates the "Property Coverage Form," *see* DE

---

[5] In any event, *no provision* of the Policy lists Plaintiffs as "Named Insured."

1-2 at 59, which expressly provides that "'you' and 'your' refer to the Named Insured *shown in the Declarations*." DE 1-2 at 145. Plaintiffs are not listed as Named Insured in the Declarations and therefore are not entitled to sue under UltimateCover. DE 1-2 at 32.

Where the Policy intends to encompass property owners like Plaintiffs as "insureds"--as in the Commercial Liability Part--it does so by listing them clearly and unambiguously as "Additional Insured." *See* DE 1-2 at 104. By contrast, where the Policy, as in Ultimate Cover, specifically omits property owners as insured, there can be no viable argument that they are nonetheless insured under that portion of the Policy. Thus, by highlighting the differences between the liability coverages and UltimateCover, Plaintiffs emphasize their lack of standing.

Beyond the definition of "Named Insured," UltimateCover also contemplates that owners of lost or damaged property (like Plaintiffs) are not entitled to make claims under the Policy. Specifically, the Policy provides that Philadelphia Indemnity "*may* adjust the 'loss' with the owners of lost or damaged property if other than you. *If* we pay the owners, such payments will satisfy *your claims against us* for the owners' property." DE 1-2 at 161 (emphasis added).

That language makes no sense if the parties intended for third-party owners to have direct rights under the Policy. It says Philadelphia Indemnity has the *option* to

6

pay third party owners directly, but only in satisfaction of the named insured's claims against the insurance company.  Plaintiffs' reading of the Policy, which would *require* Philadelphia Indemnity to pay Plaintiffs as first-party insureds, would destroy Philadelphia Indemnity's contractual *option* to pay the third-party direction, and cannot be reconciled with the language that such payments would be in satisfaction of the Named Insured's claims (as opposed to the third-party's claims) against the carrier.

Further, this provision provides that the Named Insured claim is satisfied where Philadelphia Indemnity chooses to pay the property owner instead.  *Id.*  If property owners like Plaintiffs were Named Insured, legally entitled to enforce Philadelphia Indemnity's payment obligations under the Policy, this provision would be superfluous and nonsensical.  Thus, Plaintiffs lack first-party standing.

Plaintiffs cite no Georgia law to the contrary, and instead rely on *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wash. App. 594, 396 P.3d 351, review denied, 189 Wash. 2d 1038, 413 P.3d 565 (2017).  *Merriman* is inapplicable for at least 2 reasons.  First, it does not apply Georgia law, much less O.C.G.A. § 9-2-20.  Second, in *Merriman*, unlike here, the policy at issue *did not* define the "insured."  *See id.* at 606, ("'Insured' is undefined by Bernd's policy for the personal property coverage that remains at issue in this case.").  Here, as discussed above, the Common Policy

7

Declarations clearly define the "Named Insured."  DE 1-2 at 32.  Plaintiffs are not among them.  *Id.*  The inquiry ends there.

Finally, Plaintiffs argue that they must have standing because the HOA does not.  *See* DE 13 at 11.  First, this argument makes no sense.  The HOA's inability to sue under the Policy cannot confer standing to Plaintiffs.  Moreover, Plaintiffs' reliance on O.C.G.A. § 44-3-106(h) is misplaced.  That subsection *grants* standing to HOAs in certain circumstances.  *See* O.C.G.A. § 44-3-106(h).  It does not deprive HOAs of standing, much less the right to sue under a contract to which the HOA is a party.  Finally, Plaintiffs' citation to the HOA's Conditions, Covenants and Restrictions ("CCRs") establishes nothing.  Plaintiffs cannot establish standing by relying on matters outside the Policy to which the insurance carrier is not a party. *Bouboulis v. Scottsdale Ins. Co*., 860 F. Supp. 2d 1364, 1371 (N.D. Ga. 2012) (quoting Crisp Reg'l Hosp., Inc. v. Oliver, 275 Ga. App. 578, 583, 621 S.E.2d 554 (2006) ("'it must appear clearly *on the face of the contract* that it was intended for the benefit of [plaintiff].'") (emphasis added)).  Indeed, Plaintiffs' reliance on the CCRs to establish standing implicitly acknowledges that the allegations in the Complaint fail to do so.[6]

---

[6] In any event, Plaintiffs are wrong.  The CCRs provide that the HOA "shall have the authority to and shall obtain . . . blanket insurance for all Units." DE 13-1 at 7.  The CCRs thus grant the HOA express authority to obtain and enforce the Policy.  Moreover, although Plaintiffs only attached a portion of the CCRs, that document when read as a whole grants the HOA a continuing lien against

8

### B. Plaintiffs are not third-party beneficiaries under O.C.G.A. § 9-2-20(b).

Plaintiffs contend that, even if they are not insureds under the Policy, they may sue as third-parties under O.C.G.A. § 9-2-20(b). To establish third-party standing, "'it must appear clearly on the face of the contract that it was intended for the benefit of [plaintiff].'" *Bouboulis v. Scottsdale Ins. Co.*, 860 F. Supp. 2d 1364, 1371 (N.D. Ga. 2012) (quoting *Crisp Reg'l Hosp., Inc. v. Oliver*, 275 Ga. App. 578, 583, 621 S.E.2d 554 (2006)). "That the plaintiff would benefit from performance of the agreement is not sufficient, by itself." *Id.*

In *Anthony v. Grange Mut. Cas. Co.*, 226 Ga. App. 846, 847, 487 S.E.2d 389, 391 (1997), a mortgagee filed suit under an insurance policy that covered damage to the insured's property. The mortgagee, however, had not been listed as such on the insurance policy. Although the mortgagee had an economic interest in the insured property, the court dismissed the plaintiff's claim, reasoning that the plaintiff had not shown that the policy, by its terms, was intended for the mortgagee's benefit. The court reasoned that "[t]he mere fact that [a party] would benefit from performance of the agreement is not alone sufficient." *Anthony v. Grange Mut. Cas.*

---

Plaintiffs' unit and is recorded in the deed book for Plaintiffs' unit. *See* Complete copy of CCRs attached hereto as Exhibit A at 2, Section 2 (granting "continuing lien upon" units). Thus, the CCRs provide the HOA an "insurable interest" in the real estate. *See Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 858 (5th Cir. 1979) (lienholders have insurable interest).

*Co.*, 226 Ga. App. 846, 847, 487 S.E.2d 389, 391 (1997).

Here, the Policy does not "clearly" establish that Plaintiffs are entitled to sue. *Bouboulis v. Scottsdale Ins. Co.*, 860 F. Supp. 2d 1364, 1371 (N.D. Ga. 2012). First, as in *Anthony*, neither the Policy Declarations nor any other portion of the Policy lists Plaintiffs as "Named Insureds." DE 1-2 at 32 (listing named insureds but not listing Plaintiffs); *see also Anthony*, 226 Ga. App. 846, 847 (finding mortgagee who would benefit from insurance payment covering damage to mortgaged property lacked standing because it was not listed as mortgagee on contract and thus contract did not evince intent to benefit mortgagee).

Second, although Plaintiffs' property may be covered under the Policy,[7] "[t]he mere fact that [a party] would benefit from performance of the agreement is not alone sufficient.' (Citations omitted.)" *Anthony v. Grange Mut. Cas. Co.*, 226 Ga. App. 846, 847, 487 S.E.2d 389, 391 (1997) (mortgagee lacked standing to sue under policy even though it would benefit from payment under policy).

Third, as discussed above, the Policy provides that Philadelphia Indemnity "*may* adjust the 'loss' with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your[8] claims against us for the

---

[7] Defendants do not dispute that Plaintiffs' home is listed as covered property under the Policy.
[8] UltimateCover defines "you" as the "Named Insured." DE 1-2 at 145. And the Policy does not list Plaintiffs as "Named Insured." DE 1-2, at 32.

10

owners' property." DE 1-2 at 161 (emphasis added). The Policy thus distinguishes Named Insured, who may make claims, from property owners like Plaintiffs, who may not (but whom Philadelphia Indemnity *may* nevertheless choose to pay at its sole discretion). As discussed above, Plaintiffs' reading of the Policy would *require* Philadelphia Indemnity to pay property owners whenever their property is damaged—contravening the plain terms in the Policy.

Nevertheless, Plaintiffs cite O.C.G.A. § 33-24-4 for the proposition that they have an "insurable interest" in the subject property. *See* DE 13 at 7-8. That statute, however, provides only that an insurance policy *is not* enforceable except by an entity that has an "insurable interest." Thus, the statute merely limits those who may--if the terms of the policy allow--enforce an insurance policy. The statute *does not* automatically grant standing to any person with an "insurable interest," particularly where the policy does not list such person as an insured.[9] *See Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 858 (5th Cir. 1979) (contemplating that party with insurable interest may nevertheless be unable to

---

[9] To the extent that Plaintiffs contend they *necessarily* have standing because the HOA lacks an "insurable interest" in the unit, Plaintiffs are incorrect. As discussed above, the HOA holds a "continuing lien" against all units under the CCRs. *See* Exhibit A at 2, Section 2 (granting "continuing lien upon" units). As a lienholder, the HOA holds an "insurable interest" in the property at issue here. *See Calvert*, 601 F.2d at 858 (lienholders have insurable interest). Moreover, even if there were lack of an insurable interest in the HOA, that would be "a defense available to the insurance company," against a claim by the HOA. It would not confer contract rights on Plaintiffs. *Whitaker*, 173 Ga. App. at 746.

recover under policy).

Here, as discussed above, Plaintiffs are *not* insureds, and lack standing to sue, under the plain language of the Policy. O.C.G.A. § 33-24-4 does not alter those terms. *See* Compl., Exhibit A at 32 (list of insureds that does not include Plaintiffs). For all these reasons, the Complaint should be dismissed.

### III.   PLAINTIFFS FAIL TO PLEAD BREACH WITH SPECIFICITY.

Georgia law is clear: "[a] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015) (quoting *Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 1:11–cv–4091–TWT–ECS, 2012 WL 3756512, at *5, 2012 U.S. Dist. LEXIS 122130, at *14 (N.D. Ga. Aug. 6, 2012). In *Allstate Ins. Co. v. ADT*, LLC, No. 1:15-CV-517-WSD, 2015 WL 5737371 (N.D. Ga. Sept. 30, 2015), the plaintiff alleged that the defendant had failed to meet its contractual obligation to install and maintain a water sensor. *Id* at *6. The complaint, however, failed to identify the provision of the contract the defendant had allegedly breached. The defendant moved to dismiss and attached the contract at issue. The court granted the defendant's motion, reasoning that although the plaintiff cited the contractual provision at issue in its response brief, the complaint had failed to do so. *Id.* at *7.

Here, as in *Allstate*, the Complaint does not state which provision of the Policy Defendants allegedly breached. Instead, it merely attaches a 202 page insurance policy including myriad coverage parts, forms, declarations, exclusions, and endorsements--some of which Plaintiffs contend they did not purchase or otherwise do not apply. *See* DE 13 at 17. In their Response Brief, Plaintiffs identify--for the first time--the Policy provisions Defendants allegedly breached. (*See* DE 13 at 15). Notably, they cite portions of the Policy, *not* the allegations of their Complaint. *Id.* Plaintiffs apparently contend that Defendants were obligated to divine the provisions that Plaintiffs' intend to rely on (and Plaintiffs' interpretation thereof) from Plaintiffs' general allegations that Defendants breached the Policy by failing to pay diminished value. That is not the law. *See Allstate,* 2015 WL 5737371, at *7 (plaintiff failed to state a claim where it identified allegedly breached contractual provision for first time in response to motion to dismiss).

Nevertheless, Plaintiffs contend that they may state a claim for breach of contract simply by attaching the contract to their Complaint and alleging a breach thereof. *See* Br. at 13-14. That is inconsistent with Georgia law in *Allstate* and *Brooks*. The cases Plaintiffs cite do not hold otherwise. To the contrary, in each of those cases, the plaintiffs provided "additional specific factual allegations" alerting the defendants to the portions of the contract that were breached. *Compare Intellicig*

13

*USA LLC v. CN Creative Ltd.*, No. 1-15-CV-01832-AT, 2016 WL 5402242, at *4 (N.D. Ga. July 13, 2016) (listing numerous allegations regarding allegedly breached provisions of contract); *Hadley v. Bank of Am., N.A.*, No. 1:17-CV-1522-TWT-LTW, 2018 WL 4656426, at *19 (N.D. Ga. Aug. 27, 2018), report and recommendation adopted, No. 1:17-CV-1522-TWT, 2018 WL 4636629 (N.D. Ga. Sept. 26, 2018) (applying lenient standard to *pro se* litigant).

Here, the Complaint does no such thing. Plaintiffs implicitly admit as much, setting forth the provisions of the Policy that Defendants allegedly breached in their Response Brief without citing to the Complaint. *See* DE 13 at 17. Because statements in their Brief cannot amend the Complaint, Plaintiffs have failed to state a claim. *See Allstate Ins. Co. v. ADT, LLC*, No. 1:15-CV-517-WSD, 2015 WL 5737371, at *7 (N.D. Ga. Sept. 30, 2015) (quoting *Huls v. Liabona*, 437 F. App'x 830, 832 n. 4 (11th Cir.2011)) ("It is well-settled that a plaintiff may not amend its complaint by raising arguments for the first time in its response.").

### IV. PLAINTIFFS HAVE NOT PLED FACTS ESTABLISHING ALTER EGO LIABILITY.

Finally, although the Policy was issued by Philadelphia Indemnity, Plaintiffs "contend . . . that Philadelphia [Consolidated] is properly named in this action under, *inter alia*, theories of agency, joint venture, and/or alter ego." DE 13 at 23. *Solely based* on that "contention" in their Response Brief, Plaintiffs argue that they "have

14

demonstrated a *prima facia* relationship sufficient to withstand a motion to dismiss Philadelphia [Consolidated]." *Id.* at 23-24.

That is not the law. First, Plaintiffs cannot rely on legal "contentions" raised for the first time in a response brief. The Complaint does not contain--and, tellingly, Plaintiffs' Response Brief does not cite--a single factual allegations that would, if true, establish alter ego, agency, or joint venture liability. *See* DE 13 at 24. Second, even if Plaintiffs had stated their "contentions" in the Complaint, such bald legal conclusions would not survive a motion to dismiss in the absence of fact allegations that would establish a claim for relief that is plausible on its face, and not merely speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (legal conclusions will not survive 12(b)(6) motion).

Tacitly admitting that the Complaint contains no allegations that state a claim against Philadelphia Consolidated, Plaintiffs rely entirely on a cover letter attached to the Policy that is purportedly signed by the President of Philadelphia Consolidated (though the letter clearly identifies Philadelphia Indemnity as the insurer). *See id.* at 23-24, n.17. The letter does not remotely establish any of the elements of agency, alter-ego, or joint venture liability. It does not establish any facts regarding the relationship between the Defendants. For that reason, Plaintiffs' claims against Philadelphia Consolidated must be dismissed.

15

This 24th day of September, 2019.

          By:   */s/ Jeffrey A. Zachman*
                Jeffrey A. Zachman
                Georgia Bar No. 254916
                **DENTONS US LLP**
                303 Peachtree Street, NE. Suite 5300
                Atlanta, GA 30308
                Telephone:  (404) 527-4000
                Facsimile:   (404) 527-4198
                jeffrey.zachman@dentons.com

                Richard L. Fenton
                *(pro hac vice)*
                **DENTONS US LLP**
                233 South Wacker Drive, Suite 5900
                Chicago, IL  60606-6462
                Telephone:  (312) 876-8000
                Facsimile:   (312) 876-7934
                richard.fenton@dentons.com

                *Attorneys for Defendants*
                *Philadelphia Consolidated Holding*
                *Corp. d/b/a Philadelphia Insurance*
                *Companies and Philadelphia*
                *Indemnity Insurance Company*

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing upon all counsel of record.

This 24th day of September, 2019.

                                                */s/ Jeffrey A. Zachman*
                                                Jeffrey A. Zachman