# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RONALD HUCK and PEGGY HUCK, individually and on behalf of all those similarly situated,<br><br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>PHILADELPHIA CONSOLIDATED HOLDING CORPORATION d/b/a PHILADELPHIA INSURANCE COMPANIES, and PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>　　　Defendants. | Civil Action No.<br>1:19-cv-03336-SDG |

## ORDER

This matter is before the Court on Defendants Philadelphia Consolidated Holding Corporation d/b/a Philadelphia Insurance Companies and Philadelphia Indemnity Insurance Company's motion to dismiss Plaintiffs Ronald and Peggy Huck's Complaint [ECF 3]. For the reasons stated below, Defendants' motion is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**.

## I. BACKGROUND

The following facts are treated as true for purposes of this motion.[1] Plaintiffs are the owners of the real property located on Falmouth Court S.E., Smyrna, Georgia.[2] On January 7, 2014, Plaintiffs' home suffered water and other damage.[3] Plaintiffs reported the damage to Defendants, claiming their home was covered by commercial insurance policy number PHPK996169 (the "Policy").[4] The policy was issued by Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") and lists two named insureds: Ivy Walk at Vinings Neighborhood Association, Inc. and Ivy Walk at Vinings Condominium Association, Inc. (collectively, the "Associations").[5] Plaintiffs allege Philadelphia Consolidated Holding Corporation ("Philadelphia Holding") may be involved as the parent of Philadelphia Indemnity.[6] Defendants accepted Plaintiffs' claim and paid certain

---

[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2] ECF 1-2, ¶ 6.

[3] *Id*. ¶ 2.

[4] *Id*.

[5] *Id*. at 32.

[6] ECF 13, at 31.

costs to repair the home.[7] However, while Defendants authorized repairs to the home, Plaintiffs allege the fair market value of their home diminished due to the damage.[8]

On June 20, 2019, Plaintiffs filed their putative class action Complaint against Defendants in the State Court of Cobb County, asserting claims for: breach of contract (Count I), declaratory and injunctive relief (Count II), and attorney's fees (Count III).[9] Generally, Plaintiffs allege Defendants breached the Policy by failing to assess or pay them for the diminished fair market value of their home after the damage.[10] Plaintiffs also seek to represent a putative class of:

> All individuals and entities formerly or currently insured under insurance policies issued by Defendants that provide coverage for their property located in the State of Georgia who, within the period of six years preceding the commencement of this action through the date of class certification, presented first-party claims arising from direct physical losses to their properties as a result of water damage, mold damage, fire damage, foundation damage and/or structural damage to their property but for which Defendants failed to perform a diminished-value assessment in connection with said claims.[11]

---

[7]    ECF 1-2, ¶¶ 22–23.

[8]    *Id*. ¶¶ 24–26.

[9]    ECF 1, at 2.

[10]   ECF 1-2, ¶ 4.

[11]   *Id*. ¶ 28.

On July 23, 2019, Defendants timely removed the action to this Court based on diversity jurisdiction.[12] On July 30, 2019, Defendants filed the instant motion to dismiss.[13] Plaintiffs filed a response on August 27, 2019.[14] Defendants filed a reply on September 24, 2019.[15]

## II.    LEGAL STANDARD

Plaintiffs' Complaint was originally filed in the Superior Court of Cobb County and removed to this Court. "The pleading standard in Georgia [state court] is lower than the standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under Georgia law, fair notice of the nature of the claim is all that is required, and the elements of most claims can be pled in general terms. Pleading conclusions, rather than facts, may be sufficient to state a claim for relief." *Ullah v. BAC Home Loans Serv. LP*, 538 F. App'x 844, 846 (11th Cir. 2013) (citations omitted).

Federal Rule of Civil Procedure 8(a)(2), conversely, requires a pleading to contain a "short and plain statement of the claim showing that the pleader is

---

[12]   ECF 1, at 7–8.

[13]   ECF 3, at 2.

[14]   ECF 13.

[15]   ECF 15.

entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (*quoting Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (*quoting Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (*quoting Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Choice of Law

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). This includes the forum state's own choice of law rules. *Ferguson v. Trans World Airlines, Inc.*, 135 F. Supp. 2d 1304, 1308 (N.D. Ga. 2000). For contract cases, "Georgia follows the traditional rule of *lex loci contractus*." *McGill v. Am. Trucking & Trans., Ins. Co.*, 77 F. Supp. 3d 1261, 1264 (N.D. Ga. 2015). Pursuant to this doctrine, "contracts are governed by the law of the place where they were 'made,' and an insurance contract is 'made' where it was delivered." *Id*. Here, the Policy was "made" in Georgia because it was issued and delivered to the Associations in that state.[16] The parties do not dispute the applicability of Georgia law and neither has suggested that such an application would violate public policy

---

[16]  ECF 1-2, at 3, 8.

or be prejudicial to the interests of any state. Thus, the Court will apply Georgia substantive law to Plaintiffs' claims.

## B. Defendants' Motion to Dismiss

Defendants move for the dismissal of Plaintiffs' complaint on five grounds. The Court will address each ground separately.

### i. Plaintiffs Have Standing Under the Policy.

Defendants contend Plaintiffs lack standing because they are not named as parties in the Policy. Georgia law states that a "person who is not a party to a contract, or an intended third-party beneficiary of a contract, lacks standing to challenge or enforce a contract under Georgia law." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1251 (11th Cir. 2015) (*citing Haldi v. Piedmont Nephrology Assocs., P.C.*, 283 Ga. App. 321, 322–23 (2007)). For contracts, Georgia authorizes first-party and third-party standing. Defendants argue Plaintiffs cannot demonstrate either.

### 1. The Court May Consider Extrinsic Evidence Submitted by Plaintiffs.

As a threshold matter, to resolve the standing inquiry here the Court must look to documents outside the four corners of the Complaint. It is undisputed that neither Plaintiffs' names nor physical address appear in the Policy. Plaintiffs instead point to certain Conditions, Covenants and Restrictions ("CCRs") and a

security deed they claim list their address, by lot number, as demonstrating their coverage under the Policy.

As a general rule, on a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."). The Eleventh Circuit recognizes three exceptions to this rule.

> First, conversion will not occur if the court properly takes judicial notice of attached exhibits. Second, a document attached to the pleadings as an exhibit may be considered if it is central to the plaintiff's claim and the authenticity of the document is not challenged. Third, the conversion is harmless and does not require notice if the parties, *inter alia*, made all arguments and submitted all the documents they would have even with sufficient notice.

*Adamson v. Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (citations omitted).

The Court may take judicial notice of the CCRs and security deed because they are public documents. These documents were publicly filed, recorded, and notarized. As such, they are "capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be questioned." *Bryant*, 187 F.3d at 1280 (*quoting* Fed. R. Evid. 201(b)). This Court has held that "public records, such as recorded security deeds, are among the permissible facts that a district court may consider on a motion to dismiss, without converting the motion to one for summary judgment." *Annen v. Fed. Nat'l Mortg. Ass'n*, No. 1:16-cv-02177-SCJ-AJB, 2016 WL 11567870, at *3 (N.D. Ga. Nov. 16, 2016), *report and recommendation adopted*, No. 1:16-cv-2177-SCJ, 2016 WL 11567820 (N.D. Ga. Dec. 9, 2016). *See also Hadley v. Bank of Am., N.A.*, No. 1:17-cv-1522-TWT-LTW, 2018 WL 4656426, at *19 (N.D. Ga. Aug. 27, 2018), *report and recommendation adopted*, No. 1:17-cv-1522-TWT, 2018 WL 4636629 (N.D. Ga. Sept. 26, 2018) ("This Court, however, takes judicial notice of Plaintiffs' Security Deed filed in Cherokee County."); *Kareem v. Ten-X, LLC*, No. 1:18-cv-0160-ELR-JSA, 2018 WL 3702461, at *3 (N.D. Ga. Apr. 27, 2018), *report and recommendation adopted*, No. 1:18-cv-00160-ELR, 2018 WL 3702436 (N.D. Ga. July 18, 2018) (taking judicial notice of certain documents related to real property, including security deed); *Ricketts v. Bank of Am., N.A.*, No. 1:12-cv-04034-RWS, 2013 WL 3191077, at *1 n.1 (N.D. Ga. June 21, 2013) ("The court may take judicial notice of public records not attached to the Complaint, including in this case the Security Deed, when considering a motion to dismiss.").

Additionally, the Court may consider the CCRs and security deed because they are central to Plaintiffs' claims and neither party has questioned their authenticity.[17] These documents establish the parties' relationship, govern which parcels of land are insured, and delineate the parties' responsibilities and obligations.[18] Indeed, these documents are at the core of Plaintiffs' claims. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1344 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of its authenticity."); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010) (*citing Maxcess, Inc.*, 433 F.3d at 1340 n.3) ("We have previously held that such relationship-forming contracts are central to a plaintiff's claim.").

Therefore, since the CCRs and security deed are public documents and central to Plaintiffs' claims, the Court may consider them without converting the motion to dismiss into a motion for summary judgment.

---

[17]   ECF 13-1, at 8, 15.

[18]   *Id.*

### 2. Plaintiffs Do Not Have First Party Standing Under the Policy.

To have first party standing under a contract in Georgia, the claim must be "brought in the name of the party in whom the legal interest in the contract is vested." O.C.G.A. § 9-2-20(a). *See also Breus v. McGriff*, 202 Ga. App. 216, 216 (1991) ("[S]trangers to the assignment contract . . . have no standing to challenge its validity."). This means that "one not in privity of contract with another lacks standing to assert any claims arising from violations of the contract." *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828 (2011). *See also Wirth v. Cach, LLC*, 300 Ga. App. 488, 489 (2009) ("The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it.").

It is undisputed that Plaintiffs are not named parties in the Policy.[19] Moreover, the Complaint contains no allegations that Plaintiffs are in privity with either of the named insureds.

Plaintiffs, nonetheless, assert they have first party standing because they have "a substantial economic interest in their own home and personal property therein, both of which are the subject of the Policy."[20] This argument misinterprets

---

[19]  *Id.* at 32.

[20]  ECF 13, at 11.

the meaning of a "legal interest in the contract" under the Georgia statute. According to Georgia case law, parties with a legal interest in the contract are the named parties and those in privity with them. *Dominic*, 310 Ga. App. at 828. Plaintiffs are neither. They are not named parties in the Policy. Nor are they in privity with the named insureds—the Associations—as there is no indication that Plaintiffs have been expressly assigned a written contractual right to collect payments or sue to enforce a right. *See Level One Contact, Inc. v. BJL Enters., LLC*, 305 Ga. App. 78, 80 (2010). Thus, Plaintiffs do not have first party standing.

### 3. Plaintiffs Do Have Third-Party Standing Under the Policy.

Georgia law permits third-party beneficiaries to assert claims under a contract. O.C.G.A. § 9-2-20(b) ("The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."). Third-party beneficiary status "depends upon the intention of the contracting parties to benefit the third party, and this intention is determined by a construction of the contract as a whole." *Am. Fletcher Mortg. Co. v. First Am. Inv. Corp.*, 463 F. Supp. 186, 195 (N.D. Ga. 1978). Put another way, "[a] third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person." *Dominic*, 310 Ga. App. at 828. To obtain this status, the contracting parties must demonstrate in the contract itself

their intention to benefit the third party. *Id*. ("A third party has standing to enforce that type of contract if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient."). There is no requirement, however, "that the third-party beneficiary be specifically named in the contract." *CDP Event Servs., Inc. v. Atcheson*, 289 Ga. App. 183, 184 (2008). *See also Estate of Pitts v. City of Atlanta*, 312 Ga. App. 599, 603 (2011); *Marvel Enters. v. World Wrestling Fed'n Entm't*, 271 Ga. App. 607, 615 (2005). If the contract is silent regarding the "intent to confer a benefit upon a plaintiff, the plaintiff may not recover as a third-party beneficiary to the contract." *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 311 Ga. App. 693, 698 (2011).

In *Auto Owners Insurance Company v. Southwest Nut Company*, the plaintiff insurance company—the insurer of a warehouse—attempted to sue the warehouse's tenant and a second insurance company pursuant to an insurance agreement between the two after a fire at a warehouse. 564 F. App'x 1002, 1004 (11th Cir. 2014). The Eleventh Circuit held that the plaintiff could not maintain a direct suit against the tenant and the second insurance company because the plaintiff insurance company was not an intended beneficiary of the agreement between the tenant and the second insurance company. *Id*. The Eleventh Circuit drew a distinction between "intended beneficiaries and incidental beneficiaries,"

and held that "[a] plaintiff is not a third-party beneficiary if a policy only incidentally covers his property." *Id*. at 1005. The court found that, while the insurance contract "may occasionally provide coverage for property actually owned by another individual," the policy at issue was instead "intended to protect the insured . . . and not a third party." *Id*.

Here, the parties agree that Plaintiffs' names are not listed in the Policy. However, unlike *Auto Owners*, the record demonstrates the intent of the Associations and insurers to benefit Plaintiffs. They are intended—not incidental—beneficiaries because their real property is covered by the Policy.[21] In the "Locations Schedule" subsection of the Policy, the address "191-194 Falmouth Ct., Smyrna, GA 30080" is listed as "Bldg. No. 0005" and is a covered property.[22] The security deed lists Plaintiffs as the owners of the real property located on Falmouth Court in Smyrna, Georgia."[23] The attachment to the security deed, entitled "Legal Description," states Plaintiffs' property is "ALL THAT TRACT OR PARCEL OF LAND LAYING . . . BEING LOT 192, OF BUILDING

---

[21]    ECF 13-1, at 7.

[22]    ECF 1-2, at 30.

[23]    ECF 13-1, at 14.

UNIT 22, IVY WALK AT VININGS."[24] Since Plaintiffs are the owners of "Lot 192," which is within the "191-194 Falmouth Ct." designation, Plaintiffs' home is a covered property under the Policy.

Moreover, Article VII of the CCRs details the insurance coverage provided by the Policy.[25] This subsection states that the Associations' "Board is hereby authorized to . . . purchase such insurance coverage *for the benefit of the Association and the Owners*."[26] The CCRs define an "Owner" as "the record owner, whether one or more Persons, of the fee simple title to any Unit located within the Community."[27] As stated above, the security deed lists Plaintiffs as the fee simple owners of the real property located on Falmouth Court in Smyrna, Georgia, which is legally described as being "LOT 192, OF BUILDING UNIT 22, IVY WALK AT VININGS." Since Plaintiffs are record owners, the Associations purchased the insurance from Philadelphia Indemnity for Plaintiffs' benefit. Thus, viewing the Policy, CCRs, and security deed in tandem, the Court is satisfied that Plaintiffs have third-party standing to maintain this suit.

---

[24] *Id*. at 16.

[25] *Id*.

[26] ECF 13-1, at 14 (emphasis added).

[27] *Id*. at 10.

### ii. Plaintiffs Have Not Sufficiently Pled a Claim for Breach of Contract.

Defendants also seek dismissal because Plaintiffs "do not cite any specific provision of the Policy that they claim Defendants breached."[28] In Georgia, "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). A plaintiff is prohibited from only generally asserting "a breach of contract, without identifying any provisions or any specific agreements that were breached, nor excerpting any relevant portions of an agreement. *Estate of Bass v. Regions Bank, Inc.*, Nos. 17-13048, 18-12917, 2020 WL 284094, at *4 (11th Cir. 2020). This rule has been applied to insurance contracts. *Allstate Ins. Co. v. ADT, LLC*, No. 1:15-cv-517-WSD, 2015 WL 5737371, at *7 (N.D. Ga. Sept. 30, 2015) ("Plaintiff does not identify what contract provision was allegedly breached, and for this reason, Plaintiff's Complaint, as currently pled, fails to state a claim for breach of contract and is required to be dismissed.").

The Court agrees that Plaintiffs' vague allegations of breach are insufficient to state a claim. As an example, Plaintiffs simply conclude that "[b]y failing to

---

[28] ECF 3-1, at 9.

account for diminution in value . . . and/or by failing to pay Plaintiffs and Class members the diminution in value of their property, Defendants breached their contracts."[29] While Plaintiffs attach the entirety of the Policy to the Complaint, they do not indicate which provision of the over 200-page document required Defendants to account for and pay Plaintiffs for the diminution in value of their property. While Plaintiffs are not required to quote from the Policy, they must do more to provide Defendants with adequate notice of the alleged breach; the Policy itself contains a plethora of coverage provisions, forms, exclusions, and endorsements, any of which could, theoretically, saddle Defendants with liability.

Seemingly acknowledging this omission, for the first time in their response brief Plaintiffs allege Defendants breached the Policy's UltimateCover's Property Coverage Part Declarations, UltimateCover's Form Schedule, and several provisions within the specific Property Coverage Form.[30] Plaintiffs' brief cites page numbers, paragraphs, and quotes the relevant provisions of the Policy on which they purport to rely on.[31] However, "[i]t is well-settled that a plaintiff may not

---

[29]    ECF 1-2, ¶ 38.

[30]    ECF 13, at 21.

[31]    *Id*. at 20-21.

amend its complaint by raising arguments for the first time in its response" to a motion to dismiss. *Allstate*, 2015 WL 5737371, at *7.

Plaintiffs' request for the Court to adopt a relaxed pleading standard permitting them to state a plausible claim by merely referencing and attaching the contract is unpersuasive.[32] Plaintiffs point to this Court's decisions in *Intellicig USA LLC v. CN Creative Ltd.,* NO. 1-15-cv-01832-AT, 2016 WL 5402242 (N.D. Ga. 2016) and *Hadley v. Bank of Am., N.A.*, No. 1:17-cv-1522-TWT-LTW, 2018 WL 4656426 (N.D. Ga. Aug. 27, 2018), *report and recommendation adopted*, No. 1:17-cv-1522-TWT, 2018 WL 4636629 (N.D. Ga. Sept. 26, 2018). Each decision is distinguishable and not as broadly applicable as Plaintiffs argue. For example, the plaintiff's allegations in *Intellicig* contained far more specific factual detail than the vague assertions found in Plaintiffs' Complaint. *Intellicig*, 2016 WL 5402242, at *4–5. *Hadley* also fails to move the needle, as that case dealt with the leniency afforded to a *pro se* litigant in complying with federal pleading requirements. *Hadley*, 2018 WL 4656426, at *19.

Accordingly, Plaintiffs' breach of contract claim must be dismissed. However, since Plaintiffs may be able to state a plausible claim for breach of

---

[32]   ECF 13.

contract by specifically alleging the provisions on which they rely, the claim is dismissed without prejudice and Plaintiffs will be permitted to file an Amended Complaint in conformity with this Order.

### iii. Plaintiffs' Complaint Does Not Adequately Address the Contractual Limitations Period in the Policy.

Defendants also seek dismissal because Plaintiffs' claim is allegedly barred by the contractual limitations period of the Policy.[33] Defendants point to a provision in the "Commercial Property Conditions" section, which states: "No one may bring a legal action against us under this Coverage Party unless . . . [t]he action is brought within 2 years after the damage on which the direct physical loss or damage occurred."[34] Plaintiffs allege their home was damaged on January 7, 2014, but did not bring this action until June 20, 2019, clearly exceeding this two-year limitation.

In their response brief, for the first time, Plaintiffs contend their home was covered by the Policy's "UltimateCover" provision, not the commercial property provision, and that the former provision is not subject to the two-year limitations period.[35] This highlights the failure of Plaintiffs' Complaint to specifically allege

---

[33]   ECF 3-1, at 11.

[34]   ECF 1-2, at 142.

[35]   ECF 13, at 23.

which provision of the Policy Defendants breached. While Plaintiffs liberally cite and refer to the "UltimateCover" provision in their response, Plaintiffs cannot amend their Complaint in this manner. *Allstate*, 2015 WL 5737371, at *7. Plaintiffs will have an opportunity to file an Amended Complaint to clarify this issue.

     *iv.*    **Plaintiffs' Cause of Action for Declaratory and Injunctive Relief (Count II) Is Not an Independent Claim.**

Defendants seek dismissal of Plaintiffs' request for declaratory and injunctive claims (Count II) because "those claims are derivative of their breach of contract claim and thus must be dismissed if the breach of contract claim fails."[36] Declaratory and injunctive relief is not a stand-alone, independent cause of action. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("Any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action."); *Espinoza v. Countrywide Home Loans Servicing, L.P.*, No. 14-20756-CIV, 2014 WL 3845795, at *7 (S.D. Fla. Aug. 5, 2014) ("[S]tandalone counts for injunctive relief are improper."). Injunctive relief is available only after a plaintiff articulates "a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)." *U.S. Army Corps of Eng'rs*, 424 F.3d at 1127 (*quoting Klay v. United Healthgroup, Inc.* 376 F.3d 1092, 1097 (11th Cir. 2004)). If a plaintiff does not

---

[36]  ECF 3, at 8 n.5.

show "the violation of the [independent] right asserted in his complaint," then the plaintiff "is not entitled to any relief, injunctive or otherwise." *Id.*

The Court agrees that Plaintiffs' claim for declaratory and injunctive relief is derivative of their breach of contract claim. For the reasons discussed above, the breach of contract claim must be dismissed. Accordingly, Plaintiffs' entitlement to declaratory and injunctive relief also fails.

### v. Plaintiffs' Complaint Does Not Adequately Allege an Agency Relationship.

Defendants also seek the dismissal of all claims alleged solely against Philadelphia Consolidated because it "did not issue the Policy Plaintiffs contend was breached" and it "cannot breach a contract to which it is not a party and under which it therefore had no obligation to perform."[37] Under Georgia law, "[i]t is axiomatic that a person who is not a party to a contract is not bound by its terms." *Phillips v. Ocwen Loan Servicing, LLC*, 92 F. Supp. 3d 1255, 1267 (N.D. Ga. 2015) (*citing Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (2006)). *See also Gondolier Pizza Int'l, Inc. v. CRT Too, LLC*, No. 1:08-cv-01986-JEC, 2009 WL 3152183, at *11 (N.D. Ga. Sept. 29, 2009) ("[T]he general rule is that one who does not sign a contract is not bound by the contract's terms.").

---

[37] ECF 3-1, at 15.

The Policy was executed by Philadelphia Indemnity Insurance Company and the Associations.[38] Philadelphia Consolidated is not a named party. Plaintiffs concede as much, but nonetheless assert that Philadelphia Consolidated is "properly named in this action under, *inter alia*, theories of agency, joint venture, and/or alter ego."[39]

This argument fails. The Complaint is devoid of any specific facts demonstrating an agency relationship between Philadelphia Consolidated and Philadelphia Indemnity. Plaintiffs simply rely on their single, conclusory statement to establish the relationship. This is insufficient at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Not does Plaintiffs' citation to the Policy's cover letter, attached to the Complaint, automatically imbue Philadelphia Consolidated with an agency relationship. This letter does not contain any factual statements regarding the

---

38    ECF 1-2, at 28.

39    ECF 13, at 29.

relationship between Philadelphia Indemnity and Philadelphia Consolidated.[40] Thus, Plaintiffs' claims against Philadelphia Consolidated must be dismissed. Plaintiffs will be permitted an opportunity to plead specific facts supporting an agency or alter ego relationship.

## IV.   CONCLUSION

Defendants' motion to dismiss [ECF 3] is **GRANTED**. Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall be permitted to file an Amended Complaint within 14 days of the entry of this Order. Within 21 days after being served with the Amended Complaint, Defendants shall file a response. If Defendants respond by answering, discovery shall commence 30 days thereafter and the parties shall file their initial disclosures and a revised joint proposed preliminary report and discovery plan 14 days after the filing of the answer.

**SO ORDERED** this the 19th day of March 2020.

_____
Steven D. Grimberg
United States District Court Judge

---

[40]   ECF 13, at 29–30.